Good afternoon, your honors. Katherine Sweetser for plaintiff appellant Tiffany Tabares. I'd like to reserve four minutes for rebuttal if possible. The district court in this case committed reversible error by failing to apply California law to plaintiff's negligence claim. California law requires a broader look at pre-shooting tactics and the officer's conduct throughout the encounter rather than the federal law standard which examines the reasonableness of sorry sorry about that in this case there are numerous disputed facts about whether officer Esparza breached his duty of care under California law by failing to de-escalate the encounter or call for backup as dictated by post despite numerous signs of mental illness on the part of Mr. Tavares by failing to warn Mr. Tavares prior to the shooting and by detaining Mr. Tavares simply because he was unhoused a jury should have sorry counsel I was gonna say for me it would probably help if you proceed a little more deliberately and slowly and I'll give you an extra two minutes of argument to assure your cooperation thank you so much sorry about that a jury should have determined whether officer Esparza's conduct was negligent instead the district court chose to exercise supplemental jurisdiction and applied the narrower federal standard to the officer's conduct at the moment of shooting rather than applying California standard regarding pre-shooting tactics to the entire encounter under Hays so this court should remand the case to the district court California law standard or decline supplemental jurisdiction plaintiff is entitled to a trial on her negligence claim below plaintiff presented both a declaration from a former police officer who was present at the scene and a declaration from a police practices expert who testified that the conduct violated the post standards this evidence created material disputes of fact on this key issue and in particular at er 201 plaintiff's expert opined that a reasonable officer an officer as far as his position would have known or should have known that Mr. Tavares was mentally ill officers are trained to recognize indicators of mental illness and as far as I listed at least five such indicators in his declaration at er 308 to 8 3 10 including Mr. Tavares was inappropriately dressed for the weather in a bulky virus was walking abnormally he was exhibiting signs of paranoia or hypervigilance and he was fidgeting or clenching he also looked dazed in fact a reasonable former police officer at the scene whose declaration is at er 207 recognized Mr. Tavares as presenting signs of mental illness plaintiff's witness stated that Mr. Tavares was talking to himself and making gestures with his hands he further testified he did not think the subject was dangerous but he watched him because he thought he might be having mental health issues council can I can can I just to I do you need this argument to win meaning does it matter whether the officer thought he was mentally ill or not or is there just a question on negligence about whether it was appropriate to fire the shots under the illness or not well the the question under negligence is not solely whether it was appropriate to fire the shots at the moment of the shooting but it's the totality of the circumstances and all of the pre-shooting tactical conduct that's really the difference between state law and federal law that you take into account all the pre-shooting tactical conduct so I would say that yes the court can find that the officer did not appropriately de-escalate failed to warn Mr. Tavares did not fundamentally say Mr. Tavares at the time I mean this is an this is an interesting case because we have three separate videos of what actually happened you know so many times we get stuck with affidavits you know which we have no basis of knowing whether they accurately represent what happened or what didn't happen but you watch that video or all three of those videos and you put them together can't you just say there is a question of fact as to whether when Mr. Tavares was standing there unarmed and the officer stepping away from him there's a question of fact whether or not it was reasonable to fire those shots at that moment absolutely isn't that enough I mean I again I'm not I'm not trying to take away all the other issues because I think you actually have some good arguments on them but I'm just wondering how far this court has to go I was a little bit confused by the district court's opinion because it seemed to suggest that the standard and maybe this is what you were alluding to already that the standard under state law seemed to be the same it was almost as if the district court said well here I've made these decisions under federal law state law is the same thing so that's why we're that's why we're dismissing these claims and that that in and of itself seems to be erroneous and so the question then is how how much further do we need to go into looking at all this do we still need to address all these different factors that you're talking about or do we just need to say look most at a fundamental level the state court standard under state law is different than the federal constitutional standard you've got to relook at this absolutely that is that's all the this court needs to find is that the district court applied the wrong standard and that the court should consider the state law standard or decline supplemental jurisdiction if it so chooses but there is no need to reach all these issues if the court finds that the wrong legal standard was applied okay and I don't want to take away from these other arguments you you find it go I just wanted to kind of get your position uh straight for me because I wasn't sure if you were asking us if there's something that required us to find that there was I mean because you have evidence that I mean it's it's also pretty amazing that you had an ex-officer on scene that that that saw this and then puts in an affidavit about uh you know what what his impression was and so I didn't know if that was the key to your case or if the most fundamental point is was it unreasonable to fire the shot um anyway absolutely I mean I think the most fundamental point is whether or not the this shooting was unreasonable under state law um and I think this court has been clear in the past and Hayes made very clear that a police shooting can be unreasonable under state law um it takes into account all of the pre-shooting conduct it also takes into account as you said that he was unarmed that the officer did not give a warning before firing um and there's been many cases since Hayes including the estate of Naharo case the Rivera case the Craig case and Zion versus County of Orange that have brought out this fact that a shooting there is a duty of care that the police owe to citizens and that this shooting like this is in fact unreasonable under California law but the court doesn't have to reach with the question of whether it's mandate simply to the state is it your understanding I was also surprised I mean you didn't appeal you didn't appeal the federal constitutional claims I just out of curiosity what what is there a reason that you didn't appeal those and you only appealed the state law claim the state law claim was the most clear error of law and we do understand that the federal claims present other issues such as qualified immunity um at least as to the excessive force claim under the fourth amendment I didn't see the district court as as as dismissing it under qualified immunity it seemed like there's no constitutional violation full stop yes well we don't agree with that finding um we chose well not only you but I'm I'm shocked by it I'm I'm absolutely shocked by it and I I just can't make heads or tails of it because I'll be honest I mean you didn't appeal it but I'm absolutely shocked that the district court said that there was no absolutely no possible way of there being a constitutional violation here now whether there was qualified immunity is a separate question but that's not what the district court relied on and so many of these cases we get out of or or the plaintiffs end up losing because of qualified immunity and the supreme court has set down a pretty tough standard uh for qualified immunity but that's not this case so I'm just wondering what I'm missing about this case because this this seems you know the district court's opinion here seems way off the reservation of what the case law would normally require and I'm just wondering what I'm missing here I mean we absolutely agree with you okay yes so um yeah the plaintiff plaintiff appellate would just say that Scott versus Harris did not justify this decision um as in Zetwick and Voss reasonable inferences as Nelson just pointed out can be different reasonable inferences can be drawn from the video and the video doesn't show the start of the encounter um so it doesn't affect this pre-shooting conduct um and if there are no further questions I'll just reserve time for rebuttal I'm here Judge Kelly any question Judge Kelly please you can reserve your time for rebuttal we'll hear from Mr. Chong thank you your honor may it please the court uh I guess I'd like to start with uh clarifying some things that were brought up by Judge Nelson and uh the most important fact is something that Judge Nelson alluded to is the fact that plaintiff did not appeal the uh summary judgment on the fourth amendment excessive force claim and uh we believe that that's actually dispositive of the negligence claim as well uh in Hernandez so see this is where I find this is where I really struggle I I got to be honest with you I I do not see the case law to suggest that a constitutional violation is the same thing as a state law negligence claim I think to the extent that we try and conflate those two standards we we we've totally undermined the constitution and and that's why I'm I'm admittedly a little bit surprised that the district court made the decision that it did on the on the constitutional claim you agree that the district court found there was no constitutional violation it did not say that the officer was entitled to qualified immunity on the on the fourth amendment excessive force claim is that right well by definition since there was no constitutional violation um they're entitled to summary judgment it didn't reach the second oh I understand that but there's two ways to get to summary judgment one is to say well it might have been a constitutional violation but the officer was entitled to qualified immunity or there just was no way under you know at all that there was a constitutional violation and you agree that that that the district court did not rely upon qualified immunity but instead said there was no way that this was a constitutional violation here correct it didn't rely on the second prong qualified immunity it reached the underlying question of whether there was said there was no there was no constitutional violation at all correct and I think to that point your honor if you look at the california supreme court case hernandez versus city of pomona we cited in our briefing it's 46 cal fourth 501 it's from 2009 it said that to the extent that the pre-shooting conduct alleged under the claim of negligence under state law to the extent that those matters were addressed on the fourth amendment excessive force claim it's dispositive of that aspect of the state law claim so plaintiff has to identify some pre-shooting conduct that was not a basis for the fourth amendment claim in order to have a broader negligence claim so to the extent that I will agree with you your honor that negligence is not categorically the same as a fourth amendment excessive force claim however to the extent that the fourth amendment excessive force claim was determined against the plaintiff and the plaintiff has not appealed that aspect of the ruling she's bound by those determinations as to those facts that were addressed and adjudicated as part of the fourth amendment claim and what's key is that everything that if I could interject yes were there particular findings of fact that the court said were instrumental in its dismissal of the constitutional claim well your honor it was obviously a totality of the circumstances analysis however just as a brief summary my question was were there particular findings of fact that the district court made and said were relevant or material yes your honor just yes in brief summary your honor there was the fact that officer esparza as a certified drug recognition expert saw objective signs of drug intoxication which was corroborated by the independent registered nurse who has training and experience in the emergency room with people who under the influence of stimulants who who concurrently believed that the decedent was under the influence of pcp or methamphetamine which was further confirmed by post-mortem toxicology that showed that he had methamphetamine in his system then the the fact that all of the witnesses agreed that the decedent aggressively advanced on the officer when the officer pulled out his taser and told him to stop he did not stop and the taser and he still didn't stop and significantly as the district court recognized in its opinion below the plaintiff's counsel at oral argument made expressly clear they took no issue with the reasonableness of the deploying of the taser so all the way up through there you have lawful conduct on behalf of officer esparza and at that point the decedent swings his right fist and connects with the officer's head they go to the ground and it's an all-out struggle as one of the uh independent witnesses described it himself and during that encounter officer esparza testified that the decedent grabbed his gun in his holster and yanked it to try to get it out of his holster he yanked it but he didn't he didn't get the gun yeah and officer esparza knew he didn't get there excuse me yeah an officer knew he didn't get the gun yes your honor but as the district court cited in the decision below there's a factually materially analogous case in the ninth circuit billington versus smith in which uh grabbed an officer's gun he did not successfully take the case i know i i can't accept that that that is on i just that's where this whole thing falls apart for me if you're in the struggle perhaps but here where he had the officer had gotten away from mr tabaris and was backing up had his guy i mean we can see the whole thing i understand here i just don't understand how this can't possibly under any reasonable theory be be be negligence your honor that was the exact same circumstances in billington versus no it wasn't the same situation in billington in billington they were still engaged in the struggle your honor there was a separation of several feet and that is exactly the same as what occurred but but my understanding they may have had a separation but he was coming at him now if tabaris had if tabaris had charged him a second time this might be a different case and your honor in this case it's it's on that score it's actually more justified is billington because in this case mr tabaris armed himself with an object off of uh mr as far as his person which is your position hold on is your position that an officer is authorized to shoot somebody who's holding a flashlight is that your position no your honor not just for holding a place thank you your honor he but don't don't talk about oh he who was holding an object let's see about what he was holding he was holding a flashlight he wasn't holding a knife he wasn't holding a gun he was holding a flashlight well your honor in the split second time he had to make the determination he reasonably perceived it was his knife shannon forged the registered nurse who was in the car right next to the incident she saw it and she thought it was a knife and mr tabaris was not just merely holding it he was bringing it up to uh to his waist height and turning toward officer as far as and that's clear from the video that he's moving was he moved was mr tabaris moving towards the officer i submit he definitely absolutely was your honor he was turning toward mr as far as turning towards him did he take a step towards mr tabaris he actually did take a step off the curb toward the officer as far as your honor um and that's clear from both and that's also clear from his body worn camera footage from this circuit i'm sorry if reasonable witnesses could disagree about whether it should have appeared he was holding a flashlight or it should have appeared he was holding a weapon is that an issue for a jury rather than an issue for summary judgment well your honor first of all again the plaintiff's counsel or plaintiff has not challenged that determination as under the fourth amendment excessive force analysis so again she's bound by it okay but the other thing that determination i thought there was not a specific determination that he was holding a knife your honor he was not holding a knife but it was not disputed that officer as far as i reasonably perceived that it was his knife because it was the same size same color and same shape as his knife i counsel i i really don't know how you can say that i really don't know how i watched the video you've watched the video we've all watched it he said immediately after the shooting when he and your honor if you look closely at the video you could see him looking down at his body and making that determination so you're saying he didn't know at the time of the shooting but he found it out later yes okay that's in his declaration and you could see it in the video itself he looks down he checks his person and then notices it was my flashlight not my knife and your honor again plaintiff is bound by that determination and if i could get back to that recent case that i wanted to direct your attention to it's monson versus city of marietta 966 f third 946 it was decided july 22nd of this year and then amended on denial of rehearing in october so that's why it wasn't in our brief but uh first resolving the fourth amendment excessive force claim in favor of the officers the panel went on to say with regards to haze and the negligence claim that although california negligence law considers the totality of circumstances surrounding the use of deadly force and it's broader than federal fourth amendment law the officers there acted reasonably under the circumstances leading up to and at the moment of their use of deadly force there wasn't a separate analysis in that case because uh just like here the same issues were briefed under the fourth amendment claim and the negligence claim and significantly and saliently it was the same trial counsel uh there as here dale galipo and they relied on the same set of facts to argue that the use of force was unreasonable under the fourth amendment and they relied the same set of facts to argue that it was negligent and that's the same exact situation you have here and again for whatever reason plaintiff didn't appeal the determination under the fourth amendment and those determinations are binding and under hernandez city of pomona to that extent uh that she is so limited now i also wanted to discuss the declaration of the former officer that your honor raised and again uh because the plaintiff hadn't appealed the fourth amendment issue that's all just been decided against her but what's in the light uh depicted in the videotape and that's from scott versus harris from the united states supreme court and the significant facts on which that former officer relied in saying that he didn't believe that uh mr tavares was a threat was he believed that officers as far as i had already subdued the decedent and that the decedent was ready to pass out because he believed that had placed him in a successful carotid hold we know from all of the videos that is categorically false he also said that he never saw anything in mr tabrash's hand and again we submit that officer as far as i reasonably believe that uh mr tabrash had taken a knife off of his person and significantly miss forge who was the closest person to the encounter independently contemporaneously believed that mr tabrash had armed himself with a knife and in those split seconds uh officer as far as i could not be required to be 100 certain that it was just a flashlight which in and of itself was a tactical flashlight with barbs on the end capable of being used as an impact weapon and certainly mr tabrash was not going to be using it just for illumination can i ask you or or uh are the officers in the training that officers received are they taught that if their tactical flashlight is taken off of their belt that they're justified in shooting the suspect your honor i think under the totality of the circumstances here where mr tabrash had engaged officer as far as in the fight for his life trying to grab his gun that hold on where was the fight for his life your honor i just said it right before you your honor asked the question he tried to take officer as far as his gun yeah tabrash didn't get his gun and there's no dispute that officer as far as it knew that tabrash didn't get his gun if there was a question about it i'm with you your honor again as this ninth circuit has said in billington versus smith the fact that the suspect forcibly attempts to obtain the gun tells you everything you need to know about that suspect's intent absolutely this guy should have been locked up absolutely it does not suggest that this guy should have been shot six times then told to lay down and then shot a seventh time your honor mr jaw i'd like to yes from my perspective as one judge here i would like you to give a specific answer to judge nelson's question which was in their training were the officers told that if a suspect wrestled away their tactical flashlight they should shoot to kill your honor i think under this the question the question is a question that really calls for a yes or no answer you should answer yes or no first and then add explanation your honor i i just cannot agree that it's a simple yes or no question your honor again questions of excessive force are are a backbound totality of circumstances analysis and i would say that um there's no specific training on what to do if someone has a flashlight but under the circumstances where an officer reasonably perceives that his own life is in danger where shannon forge independently thought her own life was in danger and the officer reasonably believed that her life was in danger as well that the use of deadly force is authorized when when that is the case and for that matter that was the finding of the district court and that was not appealed in this case and again that is dispositive because there's nothing outside of what was determined under the fourth amendment that uh appellant has identified as the basis for her broader negligence claim so again the negligence claim which was a throw-in a desperate uh hail mary as it were um not argued council i was gonna let you finish up i was gonna suggest that a desperate claim when the officer shot him six times seven times i i mean that it just doesn't even pass the laugh test council well your honor with all due respect i think uh judge staton is a fine jurist i agree and i just can't understand that's why i'm trying to figure out what i'm missing in that decision in and of itself is not under i think it i think it diminishes the office that you hold to suggest that it was a hell to bring a negligence claim when when there was shot seven times well if i could be clear on i'm not saying that the underlying that's what you said i'm not saying that the underlying claim itself was a hillary we're saying the idea that there was a broader negligence claim above and beyond the fourth amendment excessive force claim that that is what is the hail mary because again the appellant has not identified anything under the negligence theory that was not adjudicated under the fourth amendment and and this court is does not have the jurisdiction frankly to challenge or overturn the district court's determination on the excessive force under the fourth amendment well that's your best argument i don't think anybody's addressing the not under appeal but we've several of us have been addressing whether under the california negligence claim those facts were pertinent and you're not gonna get you've argued that they're foreclosed so you're you're beyond your time i'll just ask you to conclude your argument with you know in the next 20 seconds and we'll let the appellant have her rebuttal time thank you and again i'll return back to the california supreme court case hernandez versus city pomona which said that the the issues that were decided under the fourth amendment are dispositive of the negligence claim and any surviving broader appreciating negligence claim has to be based on things that were not adjudicated under the fourth amendment and with that we uh we submit all right thank you counsel an appellant two minutes let me ask you maybe to just frame the rebuttal um i mean the the best argument does seem to be that you didn't appeal the eighth amendment or excuse me the fourth amendment excessive force claim what degree of preclusive effect does that give to the findings and we'll have maybe have to go back to and parse them out a little more of the district court um and and how do you still have a um a potential negligence claim if we accept uh all the facts that the district court made on the excessive force claim see i on the fourth amendment plaintiff appellants contend that they have very little preclusive effect first of all um i believe the citation that mr chow gave from hernandez has been conclusively overruled by hayes he's had a lengthy paragraph at 697 discussing that it um it no longer applies it was overruling that language from hernandez explicitly um the district court focused its fourth amendment analysis on the second before firing um and did not look more broadly at the pre-shooting tactics and conduct that are encompassed by the california claim the district court's findings of fact um what the district court was doing was finding as a matter of law that it did not reach the fourth amendment violation and so that these facts didn't meet the fourth amendment standard but it was not finding facts in the way a jury would as being the ultimate fact finder um and rather than monson which is a high-speed chase case and seems inapplicable i would direct the court toward mendez versus county of los angeles the 2018 case um where the court in that case found that although there was qualified immunity and there was the fourth amendment was not violated the knock and announce violation actually caused the ultimate use of force against the mendez's and this was despite the fact that after the officers who failed to knock and announce mr mendez got up and grabbed a bb gun um the court found that wasn't a superseding or intervening event and i would submit that here although the plaintiffs did say that we were not basing our claim on the taser um mr cha is simply wrong that we conceded all the conduct up to that point we did not um the both zion versus county of orange and mendez made clear that conceding that one use of force might be appropriate such as using a taser does not mean conceding that the rest of the force is appropriate um so the district court's fourth amendment analysis does not control the state law claim at all under hayes or under mendez um this is a case where an unhoused person was stopped without probable cause it was not a felony stop the officer approached him immediately gave him commands to stop when he tried to leave and avoid the encounter the officer admitted that he followed him and it's a case in which the officer failed to warn him before shooting and these we presented a police practice on them um and so mr tavar should still be alive today if the if the officer had not breached his duty of thank you thank you council uh i want to commend both the council for appellate and council for appellee for your vigorous advocacy of your respective clients position but positions it's a difficult case and an important case and the parties will hear from us in due course uh but we thank you for your arguments so the clerk should please note that the debarras case has i think that's our last argument case for today and so we will now adjourn for the day
judges: Kelly, Gould, Nelson